UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| DOUGLAS J. O'MEARA, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | No. 3:10cv1424 (MRK) |
| | : | |
| LAWRENCE TERRA, | : | |
| | : | |
| Defendant. | : | |

## MEMORANDUM OF DECISION

Plaintiff Douglas J. O'Meara, a retired Stratford police officer, sues Defendant Lawrence Terra, a Sergeant of the Connecticut State Police, claiming under 42 U.S.C. § 1983 that Sgt. Terra violated his right under the Fourth Amendment to be free of unlawful and unreasonable searches and seizures. Because the uncontested record before the Court makes it abundantly clear that Sgt. Terra did not violate Mr. O'Meara's constitutional rights, Sgt. Terra's Motion for Summary Judgment [doc. # 40] is GRANTED.

### I.

"[P]roperly employed, summary judgment is a useful device for unmasking frivolous claims and putting a swift end to meritless litigation." *Quinn v. Syracuse Model Neighborhood Corp.*, 613 F.2d 438, 445 (2d Cir. 1980). Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986). "A dispute regarding a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Williams v. Utica Coll. of*

1

*Syracuse Univ.*, 453 F.3d 112, 116 (2d Cir. 2006) (quotation marks omitted). "The substantive law governing the case will identify those facts that are material, and '[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.'" *Bouboulis v. Transp. Workers Union of Am.*, 442 F.3d 55, 59 (2d Cir. 2006) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

If the moving party—here, Sgt. Terra—shows that no facts are contested, "the opposing party must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011). The opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "Where no rational finder of fact could find in favor of the nonmoving party because the evidence to support its case is so slight, summary judgment must be granted." *Brown*, 654 F.3d at 358 (quotation marks omitted).

When considering a motion for summary judgment, the Court must resolve "all permissible inferences and credibility questions in favor of the party against whom judgment is sought." *Kaytor v. Elec. Boat Corp.*, 609 F.3d 537, 546 (2d Cir. 2010). In what follows, the Court relies exclusively on facts that are uncontested.

## II.

On October 28, 2008, the Deputy Police Chief of the Stratford Police Department, Joseph J. LoSchiavo, parked his car in a space reserved for the Department's Chief. Three times that night, vehicle registration searches were run on the Deputy Chief's car from mobile data terminals at the Stratford Police Department. These searches employed the Connecticut On-Line Law Enforcement Communications Teleprocessing (COLLECT) system to access

registration information maintained both in-state and, through the National Crime Information Center (NCIC) system, nationally.

That same night, a post appeared on the Stratford Politics Blog which included a critically annotated version of an article from the Connecticut Post about Deputy Chief LoSchiavo. The blog post also included a picture of the Deputy Chief's car parked in the Chief's parking spot. On November 2, 2008, a commenter identified only as "bollicks" posted a comment which identified the vehicle in the picture as the "D/C's CAR.....PARKED IN THE POLICE CHIEFS SPOT AT HEADQUARTERS"; the commenter went on to allege that "THE CAR WASN'T EVEN REGISTERED ...OFC.DILAURI RAN THE PLATE THROUGH NCIC BECAUSE THIS CAR WAS PARKED IN THE CHEIFS SPOT AND HE THOUGH IT WAS SUSPICIOUS. THE PLATE CAME BACK TO YOURS TRULY D/C LOSCIAVO, ONCE AGAIN HE BROKE THE LAW." Mot. for Summ. J. [doc. # 40-7] Ex. 4 (Stratford Politics Blog post) (alterations and errors in original). The next comment, also by "bollicks," added: "NCIC WILL NOT LIE D/C DEVIL . . . ." *Id.*

Having been made aware of the blog post, Deputy Chief LoSchiavo informed the Chief, who in turn wrote a letter to the Connecticut State Police requesting that they investigate a potential criminal violation involving the inappropriate use of the COLLECT system by a member of the Stratford Police Department. Sgt. Terra was assigned the investigation.

On December 29, 2008, Sgt. Terra received an *ex parte* order from Judge Robert Devlin pursuant to Conn. Gen. Stat. § 54-47aa(b) requiring Automattic, Inc., the host company of the Stratford Politics Blog, to disclose "basic subscriber information" associated with the screen name "bollicks." Applying for the order, Sgt. Terra noted that NCIC and COLLECT information is designed for law enforcement purposes and that dissemination of that

information for unrelated purposes is a violation of those systems' policies. Sgt. Terra also claimed that he sought the identity of the blog commenter in connection with his investigation into a violation of Conn. Gen. Stat. § 53a-253, computer crime in the third degree. Sgt. Terra detailed the steps that had been taken in the investigation up to that point.

Automattic provided email addresses associated with the individual who created the blog post as well as the AOL email address which "bollick" had used to register with the site. On February 17, 2009, Sgt. Terra obtained another *ex parte* order from Judge Devlin asking AOL for the basic subscriber information associated with the email address Automattic had provided. In response, AOL disclosed that the email address was assigned to Joanna O'Meara, Plaintiff's ex-wife. The report also listed several other screen names associated with the account, some of which included "Stratford," "cop," and "128," Mr. O'Meara's former ID number.

Mr. O'Meara was eventually identified as "bollicks" but the State's Attorney declined to prosecute him. Mr. O'Meara subsequently filed this action, claiming that Sgt. Terra had made two false representations to Judge Devlin when he obtained the December 2008 *ex parte* order: first, he claimed that he was investigating "the illegal and unauthorized dissemination of COLLECT / Department of Motor Vehicle dat[a] to the internet" when, in fact, Sgt. Terra knew that the dissemination of information was legal; and second, Sgt. Terra concealed from the court that the car in question had been illegally parked in the Chief's parking spot. Compl. [doc. # 1] ¶¶ 8, 9. These misrepresentations, Mr. O'Meara claims, led to an unlawful and unreasonable search and seizure that violated Mr. O'Meara's rights under the Fourth Amendment.

### III.

As an initial matter, the parties dispute whether basic internet subscriber information falls within the Fourth Amendment's protections at all. Courts have repeatedly found that internet users do not have a reasonable expectation of privacy over the basic subscriber information they give to their internet service providers. *See, e.g.*, *United States v. Perrine*, 518 F.3d 1196 (10th Cir. 2008) (collecting cases); *Freedman v. Am. Online, Inc.*, 412 F. Supp. 2d 174, 183 (D. Conn. 2005). The Court need not weigh in on this issue, however, as an alternate ground for the Court's decision in this case is so clear.

Connecticut law allows law enforcement officers to request an *ex parte* order compelling the disclosure of basic subscriber information if they state "a reasonable and articulable suspicion that a crime has been . . . committed" and that the information requested is "relevant and material to an ongoing criminal investigation." Conn. Gen. Stat. § 54-47aa(b). In reviewing "reasonable suspicion determinations," the Second Circuit has said (in the related context of *Terry* stops, *see Terry v. Ohio*, 392 U.S. 1 (1968)) that courts are to "assess the totality of the circumstances . . . in order to decide whether the officer's suspicion of wrongdoing ha[d] an objective and particularized basis." *United States v. Muhammad*, 463 F.3d 115, 121 (2006). "[O]nly 'the facts available to the officer at the moment of the seizure' may be evaluated" by the court reviewing whether a reasonable suspicion existed." *Id.* (quoting *Terry*, 392 U.S. at 21-22).

At the time of he applied for the first *ex parte* order, Sgt. Terra had ascertained the following facts: (1) registration searches on Deputy Chief LoSchiavo's car had been carried out from the Stratford Police Department; (2) a commenter on a public blog had identified the car as the Deputy Chief's and had claimed that it was unregistered; (3) the commenter explicitly

claimed that this information came from an NCIC search. Sgt. Terra communicated these facts to Judge Devlin and said that he was seeking the commenter's identity in connection with his investigation into a computer crime. Connecticut's computer crime law prohibits the unauthorized disclosure of data residing in a computer system that the discloser either accessed or caused to be accessed. Conn. Gen. Stat. §§ 53a-251(e), 53a-254.

The facts Sgt. Terra alleged were true. It was reasonable to believe that, had "bollicks" turned out to be one of the police officers who accessed the COLLECT / NCIC system, that officer would have violated Connecticut's computer crime law. The fact that "bollicks" turned out to be Mr. O'Meara—who did not access the COLLECT system or cause it to be accessed—does not make it any less true that Sgt. Terra was investigating a crime when he sought the order and that finding the identity of "bollicks" was highly relevant to that investigation. Judge Devlin, who was given all of the relevant facts known at the time, twice determined that Sgt. Terra had an articulable and reasonable suspicion that a crime had been committed, and this Court sees no reason to disagree.

The Court notes in passing that the question of whether the Deputy Chief's car was illegally parked is not at all relevant to the present case—as Mr. O'Meara's counsel admitted at oral argument. All are agreed that the police officers who ran the car registration on the night of October 28, 2008 acted appropriately in doing so. Finding out who was parked in the Chief of Police's parking spot was a legitimate law enforcement activity. What Sgt. Terra was investigating was the public disclosure of the information those officers obtained. The inappropriateness of this disclosure has nothing to do with the propriety of the Deputy Chief's choice of parking spot.

According to the uncontested record before the Court, Sgt. Terra presented correct and forthright information to Judge Devlin when, following Connecticut state law, he obtained an order for the disclosure of Mr. O'Meara's basic internet subscriber information. Having done so, his subsequent search of information concerning Mr. O'Meara and his online personae was neither unlawful nor unreasonable.

Because Sgt. Terra did not violate Mr. O'Meara's Fourth Amendment rights, the Court GRANTS Defendant's Motion for Summary Judgment [doc. # 40]. **The Clerk is directed to enter judgment in favor of the Defendant and close this file.**

                              **IT IS SO ORDERED.**

                              /s/ Mark R. Kravitz
                              United States District Judge

**Dated at New Haven, Connecticut: May 3, 2012.**